UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

RICHARD BAUSANO,

        Plaintiff,

    -v-                                 Case # 16-CV-6544-FPG

                                          DECISION AND ORDER

ANTHONY ANNUCCI, et al.,

        Defendants.
───────────────────────────────

## INTRODUCTION

*Pro se* Plaintiff Richard Bausano brings this civil rights action against Defendants Gregory Saj and Daniel Kerr. ECF No. 34. His claims arise from an incident at Elmira Correctional Facility during which correctional officers allegedly shaved his hair and beard despite his exemption from such requirements on religious grounds.

Presently before the Court are three motions: (1) Defendants' motion for summary judgment (ECF No. 77); (2) Bausano's motion for summary judgment (ECF No. 86); and (3) Bausano's motion to amend the complaint (ECF No. 79). The Court first addresses the motion to amend before evaluating the summary judgment motions. For the reasons that follow, Defendants' motion for summary judgment is granted, and Bausano's motions are denied.[1]

### I. Motion to Amend

Bausano seeks to add a claim based on a document he received in October 2019 while at Five Points Correctional Facility. ECF No. 79. Bausano alleges that he received this document from a correctional officer when he asked for a form to request a disability accommodation. *Id.* at

───────────────────────

[1] Bausano requested an opportunity to speak with the Court regarding the pending motions. ECF No. 82 at 2. Given the nature of the issues presented, the Court finds that a hearing is unnecessary.

2.  The document, titled "Hurt Feelings Report," appears to be a fake, satirical form designed to mimic the sorts of boilerplate forms one might find in a correctional facility.  However, the content of the form suggests that its purpose is to ridicule or mock: the space for one's name is labelled "WHINER'S NAME"; there is a section to describe the date that one's "feelings were hurt" and identify the "name of [the] person who hurt your pansy ass feelings"; and there is a checklist wherein one can mark the reasons for filing the report, which include "I am thin skinned," "I am a wimp," and "I want my mommy." *Id.* at 3.

The Court denies Bausano's motion to amend.  First, the motion is untimely: under the scheduling order, the deadline for joining other parties and amending pleadings was June 14, 2019. ECF No. 46 at 2.  Second, the proposed amendment would be prejudicial to Defendants:  this case has already proceeded through discovery, and the proposed claim would introduce entirely new issues and parties, which would forestall the disposition of this case.  *Accord Wilcox v. Cornell Univ.*, 868 F. Supp. 2d 186, 187 (S.D.N.Y. 2012) (collecting cases).

## II.    Motions for Summary Judgment

### a.  Legal Standard

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  However, the non-moving party

"may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

Generally, when cross-motions for summary judgment are filed, the court "must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Physicians Comm. for Responsible Medicine v. Leavitt*, 331 F. Supp. 2d 204, 206 (S.D.N.Y. 2004). However, because the Court concludes that Defendants are entitled to judgment as a matter of law even considering the facts in the light most favorable to Plaintiff, it need not engage in a separate analysis.

### b. Background

On September 20, 2013, while Bausano was incarcerated at Livingston Correctional Facility, he filed a grievance. ECF No. 77-5 at 21. In the grievance, Bausano described an incident that occurred when he was received into state custody at Elmira Correctional Facility one month earlier:

> On said date . . . I went to Elmira Reception and was told to cut my hair + beard + mustash [sic] I refuse[d] to cut my hair and was told I could keep my beard + mustash [sic] because I had permit under jewish religion I showed the Sergeant + CO who was on that day. But I was to be lock down until I get my hair cut on 8/29/13 they cut my hair but a different sergeant order my beard + mustash to be cut. No one would give me their names.

*Id.* Bausano asked for monetary compensation as relief. *Id.*

Lieutenant J. Yunker investigated the grievance. He interviewed Bausano, who provided a beard exemption letter "dated 7/2/13 from Dept. Commissioner J. Bellnier." *Id.* at 27. On October 3, 2013, the Inmate Grievance Review Committee concluded that Bausano's beard was improperly removed, but it found the requested relief unreasonable because it could not "grant monetary compensation." *Id.* at 21. Bausano appealed the decision to the Superintendent. *Id.*

On October 18, 2013, David Caryl—the Inmate Grievance Program Supervisor—emailed DOCCS counsel with concerns about Bausano's grievance. ECF No. 77-5 at 32. Specifically, he noticed that the beard exemption was dated July 2, 2013, which was more than one month before Bausano was even placed into state custody. *Id.* Counsel responded that she had checked with "DC Bellnier's shop" and believed the exemption was forged. *Id.*

Defendant Saj was responsible for "overseeing security issues" at Livingston Correctional Facility, and he was tasked with investigating the alleged forgery. *Id.* at 34. Saj forwarded the matter to Defendant Kerr, a sergeant at the facility, for investigation. *Id.* at 35. After speaking with Bausano and reviewing several documents, Kerr concluded that the exemption letter was forged. *Id.* at 52.

Kerr filed an inmate misbehavior report, in which he alleged that Bausano forged the document. *Id.* at 59. A hearing on those allegations was held in late October 2013. The hearing officer found Bausano not guilty based on the statement of the Inmate Records Coordinator at Franklin Correctional Facility. Although the record is not fully clear on this point, it appears that the records coordinator stated that, in fact, Bausano's exemption letter was valid. *See* ECF No. 77-5 at 58; *see also* ECF No. 34 at 48-49.

In August 2016, Bausano brought the present action. ECF No. 1. He alleges that the forgery investigation conducted by Saj and Kerr was in retaliation for the filing of the grievance against the Elmira correctional officers. ECF No. 34 at 10. Bausano cites "religion" and "equal protection" as the bases for his § 1983 action, and he also invokes the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *See id.* at 4, 14.

4

### c. Discussion

Defendants argue that the claims must be dismissed because Plaintiff failed to exhaust his administrative remedies.  The Court agrees.

Under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  If an inmate fails to exhaust his administrative remedies, he is barred from commencing a federal lawsuit.  *Martin v. Niagara Cty. Jail*, No. 05-CV-00868, 2012 WL 3230435, at *6 (W.D.N.Y. Aug. 6, 2012).  In other words, to commence a lawsuit "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself."  *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012).  Exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly."  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011).  To be "[p]roper," exhaustion must comply with all of the agency's "deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

To satisfy the PLRA's exhaustion requirement, an inmate in New York is generally required to follow the prescribed DOCCS grievance procedure, which is set forth at 7 N.Y.C.R.R. § 701.5.  The inmate's administrative remedies consist of a three-step grievance and appeal procedure: (1) investigation and review of the grievance by the Inmate Grievance Resolution Committee ("IGRC"); (2) if appealed, review of the IGRC's determination by the superintendent

of the facility; and (3) if the superintendent's decision is appealed, review and final administrative

determination by the Central Office Review Committee ("CORC"). *See id.* All three steps of this

procedure must ordinarily be exhausted before an inmate may commence suit in federal court. *See*

*Morrison v. Parmele*, 892 F. Supp. 2d 485, 488 (W.D.N.Y. 2012).

Here, Defendants assert that Bausano did not exhaust his administrative remedies with

respect to his retaliation claim. In support, they proffer a log of Bausano's administrative appeals

to CORC. ECF No. 77-5 at 13-14. There is an entry related to the shaving incident, but no entry

related to Defendants' alleged retaliation. *See id.* And at his deposition, Bausano wavered on the

issue, first suggesting that he may have filed a grievance, but then indicating that he could not

recall. ECF No. 77-4 at 359-68.

Bausano does not present any contrary evidence; indeed, he does not substantively address

this issue in any of his filings. *See* ECF Nos. 82-86, 89-92, 94, 95. The only document favorable

to Bausano is the amended complaint, in which he alleges, without specifics, that he "exhausted

his administrative remedies." ECF No. 34 at 14; *see also id.* at 4. This is insufficient to survive

summary judgment. *See Garcia v. Heath*, No. 13-CV-8196, 2019 WL 5551733, at *1 (S.D.N.Y.

Oct. 28, 2019) ("To withstand a motion for summary judgment premised on a failure to exhaust, a

plaintiff must offer more than conclusory allegations that he exhausted administrative remedies.");

*Bennett v. James*, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) (collecting cases).

Accordingly, the undisputed evidence establishes that Bausano never exhausted his

administrative remedies with respect to his retaliation claim. Thus, regardless of how his claims

are framed, they must be dismissed. *See* 42 U.S.C. 1997e(a) (stating that exhaustion is required

for action relating to prison conditions whether brought "under section 1983" or "any other Federal

law"); *Cutter v. Wilkinson*, 544 U.S. 709, 723 n.12 (2005) ("[A] prisoner may not sue under RLUIPA without first exhausting all available administrative remedies.").

A prisoner's failure to exhaust can be "a temporary, curable procedural flaw," which is why actions are often dismissed without prejudice when that flaw exists. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004); *see also Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 556 (W.D.N.Y. 2018) ("Generally, a dismissal for failure to exhaust administrative remedies is without prejudice."). But, "[o]n the other hand, dismissal with prejudice is appropriate where administrative remedies have become unavailable after the prisoner had ample opportunity to use them." *Scott*, 298 F. Supp. 3d at 556 (internal quotation marks omitted). In this case, Bausano was incarcerated at Livingston Correctional Facility for more than one year before being transferred to a different facility, and he was only recently released on parole. ECF No. 77-5 at 2; ECF No. 92 at 1; ECF No. 93; *see also Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *4 (W.D.N.Y. Mar. 17, 2014) (noting that release on parole supervision makes administrative remedies unavailable). As evidenced by the other grievances he pursued while at the facility, ECF No. 77-5 at 13-14, Bausano had ample time and ability to exhaust his administrative remedies related to this incident, but chose not to do so. Absent an explanation for his failure to exhaust, the Court concludes that dismissal with prejudice is appropriate. *See Weidman*, 2014 WL 1056416, at *4 (finding dismissal with prejudice appropriate where plaintiff remained in custody for six months but failed to file a grievance); *see also Scott*, 298 F. Supp. 3d at 556-57 (collecting cases).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 77) is

GRANTED, and Bausano's motions to amend and for summary judgment (ECF Nos. 79, 86) are

DENIED.  The Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated: May 6, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court